25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Everett CUNNINGHAM, Defendant-Appellant.
 No. 93-3795.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1994.
 
 Before: KEITH and SUHRHEINRICH, Circuit Judges; JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Everett Cunningham entered a conditional plea of guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g), and was sentenced as an armed career criminal pursuant to 18 U.S.C. Sec. 924(e). He raises two principal issues on appeal. First, defendant challenges the district court's denial of his suppression motion. Second, defendant argues that the court erred in finding that he was an armed career criminal because there were only two qualified predicate convictions for crimes of violence. More specifically, defendant argues that in one of his convictions for burglary, he was not properly advised of his rights under Boykin v. Alabama, 395 U.S. 238 (1969). Defendant also contends that one of the convictions relied on by the district court, criminal attempt to commit criminal trespass, is not a "violent felony" within the meaning of 18 U.S.C. Sec. 924(e)(2)(B). We AFFIRM.
 
 I. Facts
 
 2
 On December 5, 1992, Cleveland Patrol Officer Sean O'Donnell and his partner responded to a call from the Greyhound bus terminal in Cleveland concerning the theft of a ticket. The officers learned that the ticket of a Mr. Jason Old had been stolen. Old reported that on the previous evening while he was en route from Pittsburgh to Cleveland, his connecting ticket to Winnipeg had been stolen or lost. The ticket agent told Officer O'Donnell that defendant had recently cashed in a ticket to Winnipeg, in exchange for a one-way ticket to Pittsburgh and some cash.
 
 
 3
 The officers approached defendant, who was seated in the station waiting room. The officers asked defendant his name and for some identification. Defendant told the officers his name, but the parties disagree as to whether defendant had identification on him. Defendant maintains that he took his wallet out of his pocket and laid out several pieces of identification. O'Donnell testified that defendant said he had no identification. Defendant also testified that he was taken to a separate area adjacent to the waiting room used by security; O'Donnell denies this.
 
 
 4
 The officers observed a black canvas bag directly under defendant's seat. Officer O'Donnell testified that he asked defendant whether the bag was his and that defendant responded that it did not belong to him. O'Donnell claims that at that point he removed the bag from underneath the bench and opened it without seeking defendant's consent. O'Donnell stated that inside the bag were defendant's wallet as well as a loaded firearm. Defendant's version of the story, quite naturally, differs. He maintains that the officers first picked up the bag, and approached him with it at the security counter. Defendant stated that although he was asked by the police if he had luggage, which defendant considered to mean suitcases and not a small bag, he was never asked if the bag was his. Defendant claims that the bag was "just opened" by the police.
 
 
 5
 Defendant was then arrested and purportedly Mirandized. Defendant, however, could not remember whether he was read his Miranda rights. On the way to the station, in response to an inquiry about the weapon, defendant allegedly said to the officers "you got me."
 
 
 6
 Defendant was indicted for violations of 18 U.S.C. Sec. 922(g)(1), possession of a firearm by a convicted felon (count one) and possession of ammunition by a felon (count two). Both counts of the indictment alleged that defendant was punishable as an armed career criminal pursuant to 18 U.S.C. Sec. 924(e).
 
 
 7
 Defendant entered into the conditional plea arrangement after the district court denied his motion to suppress the bag and any statements made by defendant. At sentencing, defendant raised various objections to the court's use of prior felony convictions. The court, concluding that defendant was an armed career criminal under the statute, sentenced defendant to a term of incarceration of 200 months, to be followed by a three-year term of supervised release. This timely appeal followed.
 
 II. Analysis
 A. Privacy Expectation in the Bag
 
 8
 Defendant argues that the search of the black canvas bag was not incident to a lawful arrest and was not searched pursuant to his consent. Thus, the contents of the bag, as well as any statement made by him subsequent to the search, should have been suppressed. The district court denied the motion on the grounds that defendant lacked standing to challenge the search of the property, and that defendant had received his Miranda warnings prior to making the statement.
 
 
 9
 The question of whether defendant has standing to challenge the search of the black bag depends upon whether he abandoned it. See Abel v. United States, 362 U.S. 217, 241 (1960) (warrantless seizure of abandoned property does not violate the Fourth Amendment). In determining whether defendant abandoned the property, the appropriate inquiry is whether he had any legitimate expectation of privacy in the property. Rakas v. Illinois, 439 U.S. 128, 143 (1978) (concept of abandonment in criminal context depends on whether the person claiming the protection of the Fourth Amendment has a legitimate expectation in the invaded place). This in turns requires a consideration of whether the defendant exhibited a subjective expectation of privacy, and whether that subjective expectation is one that society recognizes as reasonable. Smith v. Maryland, 442 U.S. 735, 741-42 (1979); United States v. Frazier, 936 F.2d 262, 264-65 (6th Cir.1991); United States v. Knox, 839 F.2d 285, 293 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989); United States v. Tolbert, 692 F.2d 1041, 1044 (6th Cir.1982), cert. denied, 464 U.S. 933 (1983). This analysis involves a mixed question of law and fact, and we employ a two-tier standard of review. Factual findings by the trial court are examined for clear error; the legal determination of abandonment is reviewed de novo. United States v. Oswald, 783 F.2d 663, 665-66 (6th Cir.1986).
 
 
 10
 In this case, the district court found that defendant had denied ownership of the bag and therefore could not challenge the warrantless search. We cannot say that the district court's decision to credit Officer O'Donnell's testimony over that of defendant's is clearly erroneous. The record reflects that O'Donnell testified on both direct and cross-examination that he specifically asked defendant (a) whether he had any luggage, and (b) whether the black bag belonged to him, and that defendant both denied owning luggage and disclaimed ownership of the bag. Further, defendant's own testimony partially corroborated O'Donnell's recitation.
 
 
 11
 The district court's legal conclusion was also correct. Decisions of this circuit hold that an express denial or disclaimer of ownership in a piece of baggage constitutes an abandonment that results in a lack of standing to challenge a search. See Frazier, 936 F.2d at 265; Knox, 839 F.2d at 294; Tolbert, 692 F.2d at 1045. See also United States v. Collis, 766 F.2d 219, 222 (6th Cir.) (per curiam) (defendant abandoned shoulder bag by throwing it over a fence and failed to establish legitimate subjective expectation of privacy so as to confer standing to raise Fourth Amendment claim), cert. denied, 474 U.S. 851 (1985). Cf. United States v. Sanders, 719 F.2d 882, 886 (6th Cir.1983) (defendant did not abandon suitcase even though she left airport without it where she never affirmatively disclaimed it and consistently refused to consent to a search of it).
 
 
 12
 As for defendant's incriminating oral statement, the district court credited the officer's testimony over that of defendant's, in part because defendant could not remember whether he had been given his Miranda rights, and the officer testified affirmatively that defendant was read his Miranda rights. Once again, nothing in the record suggests that the district court's finding was clearly erroneous. In sum, defendant's motion to suppress was properly denied.
 
 B. Sentence Enhancement
 
 13
 The Armed Career Criminal Act, 18 U.S.C. Sec. 924(e), mandates that a person who violates 18 U.S.C. Sec. 922(g) by unlawfully possessing a firearm, and who has three previous violent felony convictions, shall receive a mandatory fifteen-year term of imprisonment. 18 U.S.C. Sec. 924(e)(1). The statute defines "violent felony" as
 
 
 14
 any crime punishable by imprisonment for a term exceeding one year ... that--
 
 
 15
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 
 
 16
 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 17
 18 U.S.C.A. Sec. 924(e)(2)(B) (West 1994).
 
 
 18
 The district court in this case determined that defendant had four qualifying prior "violent felonies": (1) a 1978 state conviction for burglary (guilty plea); (2) a 1979 state conviction for criminal attempt to commit burglary (guilty verdict after bench trial); (3) 1981 conviction for one count of robbery (guilty verdict after jury trial); and (4) a 1986 conviction for burglary (guilty plea). Defendant challenges the use of the first and second convictions. Because we conclude that the first conviction was constitutional, the government has established three predicate felony convictions for purposes of Sec. 922(g), and we need not consider defendant's challenge to the second conviction.
 
 
 19
 Defendant alleges that his 1978 conviction for burglary, case number CC7805917, is unconstitutional because he was not properly advised of his rights under Boykin.[1] A guilty plea, which acts as a waiver of several constitutional rights, is not valid unless entered into intelligently and voluntarily. Boykin, 395 U.S. at 242. "A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charge against him." United States v. McGlocklin, 8 F.3d 1037, 1047 (6th Cir.1993) (en banc) (citing Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976)), cert. denied, 1993 WL 557978 (U.S. Apr. 25, 1994) (No. 93-7201). However, when a defendant is represented by counsel during the plea proceedings, the plea is presumed valid in a collateral habeas corpus proceeding. Marshall v. Lonberger, 459 U.S. 422, 437 (1983). Furthermore, the mere unavailability of transcripts of the defendant's state guilty pleas does not alter this presumption of validity. Parke v. Raley, 113 S.Ct. 517, 524 (1992).
 
 
 20
 This court recently determined that a defendant may challenge the use of prior state convictions which are used under the Sentencing Guidelines. McGlocklin, 8 F.3d at 1045; United States v. Johnson, --- F.3d ---- (6th Cir. May 2, 1994) (1994 WL 158484) (prior convictions used for enhancement purposes under the Armed Career Criminal Act, 18 U.S.C. Sec. 924(e)); United States v. Aloi, 9 F.3d 438, 442 (6th Cir.1993) (same). The court stated that in order for a defendant to challenge the proposed use of a prior conviction for sentencing purposes,
 
 
 21
 the defendant must first comply with the procedural requirements for objecting to the conviction's inclusion in the criminal history score. The defendant also must state specifically the grounds claimed for the prior conviction's constitutional invalidity in his initial objection and the anticipated means by which proof of invalidity will be attempted--whether by documentary evidence, including state court records, testimonial evidence, or combination--with an estimate of the process and the time needed to obtain the required evidence.
 
 
 22
 McGlocklin, 8 F.3d at 1045 (internal quotations omitted).
 
 
 23
 In this case, the only evidence offered by defendant was his own testimony that the state trial court did not provide him with his Boykin rights.[2] The district court found, after taking testimony from defendant at the sentencing hearing, that defendant had not met his burden of convincing the court that the conviction was invalid. Given the presumptive validity of the 1978 conviction, and the district court's (albeit implicit) factual finding that defendant's testimony was not trustworthy, we conclude that the 1978 plea was properly used for enhancement under Sec. 924(e).
 
 
 24
 Defendant argues that the government presented nothing by way of testimony, affidavit, or documentary evidence to show specifically that defendant had been advised of his rights per Boykin. Defendant misunderstands the nature of proofs in such proceedings. While it is initially up to the government to establish the existence of the prior conviction, a burden which is satisfied by producing certified records of the convictions, Aloi, 9 F.3d at 442; the burden then shifts to the defendant to prove the unconstitutionality of the challenged convictions. Id.; McGlocklin, 8 F.3d at 1045. See also United States v. Warren, 973 F.2d 1304, 1310 (6th Cir.1992) (once government presents documentary evidence that a defendant properly waived his rights, the burden shifts to the defendant to prove that his convictions were in fact constitutionally unsound).
 
 
 25
 Defendant also argues that Pennsylvania Criminal Rule 319, which prescribes for the taking of pleas, does not require the advising of specific rights to a defendant who tenders a plea of guilty, but provides merely that the judge determine that the plea is "voluntarily and understandingly tendered." Apparently, defendant is asking us to assume that because the rule does not specify, any procedures employed would not meet constitutional standards. We decline to make this inference. First of all, the language of the rule mirrors the standard set forth in Boykin.[3] Second, we think it reasonable to assume that the state judge was aware of Boykin and followed it, especially in the absence of any evidence to the contrary. Thus, defendant's 1978 burglary conviction was also properly used in enhancing his sentence under the ACCA. As earlier noted, because the government has established three predicate convictions for violent felonies, the requirements of Sec. 922(g) are satisfied and we need not consider defendant's challenge to the 1979 state conviction for criminal attempt to commit burglary and/or criminal trespass.
 
 
 26
 For all the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Those rights include the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. Boykin v. Alabama, 395 U.S. 238, 243 (1969)
 
 
 [2]
 The transcript of the state proceedings apparently is unavailable
 
 
 [3]
 Contrary to defendant's suggestion, Boykin does not mandate that each constitutional right waived be enumerated and separate waivers elicited as to each. Pitts v. United States, 763 F.2d 197, 200 (6th Cir.1985) (per curiam); Fontaine v. United States, 526 F.2d 514, 516 (6th Cir.1975), cert. denied, 424 U.S. 973 (1976). What Boykin held is that a guilty plea is valid only if it is both voluntary and intelligent. Riggins v. McMackin, 935 F.2d 790, 795 (6th Cir.1991) (citing Boykin, 395 U.S. at 242). Where a defendant demonstrates that he was not fully advised of the several constitutional rights involved in a waiver that takes place when a defendant pleads guilty, the ultimate inquiry is whether the plea was voluntarily and intelligently made. Pitts, 763 F.2d at 200. This determination is made by considering the totality of the circumstances. Id. at 749